Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9716 | **DATE** | 6/3/2002 |
| **CASE TITLE** | Travelers Casualty and Surety vs. Wells Fargo Bank | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    For the reasons set forth on the attached Memorandum Opinion and Order, defendant Charles Schwab and Company, Inc.'s motion to dismiss count 2 (4-1) is denied. Schwab is ordered to answer Count 2 on or before June 14, 2002.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | JUN 5 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 9 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | 02 JUN -4 PM 4:51 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TRAVELERS CASUALTY AND SURETY )
COMPANY OF AMERICA, as assignee and )
subrogee of Allianz Life Insurance of North )
America, )
 )
        Plaintiff, )
 )
vs. ) Case No. 01 C 9716
 )
WELLS FARGO BANK N.A., and CHARLES )
SCHWAB & CO., INC., )
 )
        Defendants. )

DOCKETED
JUN 5 2002

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Travelers Casualty and Surety Company of America, assignee and subrogee of Allianz Life Insurance of North America, has sued Wells Fargo Bank and Charles Schwab & Company, Inc. for improper payment of a forged and counterfeit check. The case is before us on Schwab's motion to dismiss count 2 of the complaint, the only count directed against it. For the reasons stated below, we deny Schwab's motion.

### Facts

In mid-July, 2000, a man using the name James Carden successfully absconded with approximately $271,000 from a checking account set up in the name of the Allianz Employees' Medical Plan. Allianz had established this checking account with Wells Fargo in order to reimburse its employees for covered medical expenses. The account was managed by a

third party administrator, First Health Strategies, Inc., and the only authorized signatories on the account were Mary Anne Carpenter and Jerry Seiler, employees of First Health.

On July 18, 2000, "James Carden" opened a personal brokerage account with Schwab using a forged and counterfeit check drawn on the Allianz account. The check was made payable to Schwab in the amount of $287,651.23. Although the check contained the purported signatures of Carpenter and Seiler, these signatures were not genuine. Additionally, the check was missing an imbedded watermark and magnetic ink containing check-processing information, both of which the genuine Allianz checks contained. That same day, Schwab presented the check to Wells Fargo for payment; Wells Fargo paid the check and debited the Allianz account. Sometime after that date, Carden withdrew $271,238.22 from the Schwab account he opened with the check.

In August 2000, Wells Fargo learned from Allianz that the Schwab check was unauthorized. Schwab was also notified of the fraud and it accordingly returned to Wells Fargo the balance remaining in Carden's account at that time – $16,413.01. Wells Fargo credited Allianz's account with that sum, but refused to credit the remaining $271,000. Allianz subsequently recovered the remaining $271,000 from its insurer, Travelers Casualty, which had insured Allianz against losses resulting from forgery or alteration of negotiable instruments. Travelers, as assignee and subrogee of Allianz, brings this lawsuit against Wells Fargo and Schwab to recover the $271,000 it paid to Allianz.

## Discussion

On a motion to dismiss, the Court reads the complaint liberally, granting the motion only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of

his claim which entitles him to relief." *Conley v. Gibson*, 355 U.S. 41, 45 (1957).

Although count 2 of the complaint does not specify a legal theory,[1] in its brief, Travelers clarifies that it asserts a claim against Schwab under § 3-306 of the Illinois version of the Uniform Commercial Code. Section 3-306 provides: "A person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds ...." 810 ILCS 5/3-306.

Schwab argues that when it accepted the forged check without notice of the fraud, it took the instrument as a "holder in due course" and is therefore shielded from liability for the loss. Under the Code, a "holder in due course" is one who takes an instrument for value, in good faith, and without notice of any claim to the instrument. *Id.* Moreover, "[a] person having rights of a holder in due course takes free of the claim to the instrument." *Id.*

As an initial matter, the complaint does not allege that Schwab had any actual notice that the check was fraudulent. That, however, is not the end of the story. The Seventh Circuit recently reaffirmed the common law principle that a payee bank owes to the drawer of a check made payable to the bank a duty of care beyond that owed by an ordinary payee. In *Mutual Service Casualty Insurance Company v. Elizabeth State Bank*, 265 F.3d 601 (7th Cir. 2001), the Court stated:

> [W]hen a drawer owes nothing to a bank but writes a check payable to the bank's order, the drawer places that check in the bank's custody, with the expectation that the bank will negotiate the check according to the *drawer's* wishes; the bank may not, therefore, treat the check as bearer paper and blindly disburse the proceeds

---

[1] Nor does it need to; a plaintiff is not required to plead a legal theory. *E.g., Slaney v. The International Amateur Athletic Federation*, 244 F.3d 580, 600 (7th Cir. 2001). On a motion to dismiss, a court determines whether the plaintiff can recover under any set of facts that could be established consistent with the allegations of the complaint. *Id.* (citations omitted).

according to the instructions of any individual who happens to present the check to the bank.

*Mutual Service*, 265 F.3d at 613-14 (emphasis in original). *See also Douglass v. Wones*, 120 Ill. App. 3d 36, 46, 458 N.E.2d 514, 523 (1983) (a banking institution "is required to hold the proceeds of the instrument subject to the order of the drawer, and not the presenter, and [the bank] generally cannot be a holder in due course as against the drawer"). In these circumstances, the bank's "notice" of potential claims to the check's proceeds is presumed, and the bank cannot be a holder in due course. *Mutual Service*, 265 F.3d at 621. Indeed, the "check itself poses an unanswered question as to whom the bank is to pay." *Id.*[2]

Schwab attempts to distinguish *Mutual Service* on the grounds that it involved a bank that had an existing contractual relationship with the drawer, arguing that the heightened duty of care discussed in that case was contingent on that relationship. However, a careful reading of *Mutual Service* indicates that a contractual relationship is not necessary to give rise to this duty. *Id.* at 621-22. Indeed, no such relationship existed in *Douglass* or other Illinois cases relied upon in *Mutual Service*. *See, e.g., People ex rel. Nelson v. Peoples Bank and Trust*, 271 Ill. App. 41, 1933 WL 4479 (1933); *Milano v. Sheridan Trust & Savings Bank*, 242 Ill. App. 362, 1926 WL 3944 (1926).

Schwab additionally argues that it is not a "bank" and therefore has no more obligation to the drawer than a garden-variety payee. In *Douglass*, the court, quoting *Milano*, described some of the distinctions between a banking institution and a individual: "[t]he latter

---

[2] In support of its argument that a payee owes no duty to the drawer of a check, Schwab cites cases from other districts and one from this district that precedes *Mutual Service*. However, *Mutual Service* is controlling precedent for this case. In any event, the cases cited by Schwab involved individuals as payees. *E.g., Simmons v. Lennon*, 773 A.2d 1064 (Md. Ct. App. 2001).

-4-

does not ordinarily receive checks payable to his order from persons not indebted to him; he is not the custodian of funds in which he has no interest; nor is he a depositary for such members of the public as wish to avail themselves of his services. On the other hand, a bank is all of these." *Douglass*, 120 Ill. App. 3d at 46, 458 N.E.2d at 522. The Code itself broadly defines a "bank" to include any entity "engaged in the business of banking, including a savings bank, savings and loan association, credit union, or trust company." *See* 810 ILCS 5/4-105(1). It not a foregone conclusion, as Schwab suggests, that it performs no "banking" services. The complaint alleges that Schwab is "engaged in the business of providing securities brokerage and *related financial services*." Complaint, ¶ 28 (emphasis added). This description is somewhat vague, but it certainly does not rule out the possibility that Schwab performs functions like those of a traditional bank and thus should be held to the same standard. In any event, at this point we cannot conclude that Travelers can prove no set of facts which would entitle it to relief. *Conley*, 355 U.S. at 45.

Schwab's motion also fails for another reason. An instrument that is taken by a "holder in due course" must also be free from "such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity." 810 ILCS 5/3-302(a)(1). Travelers alleges that Schwab should have been alerted to the fraud because the check did not contain the "usual and customary magnetic ink containing check-processing information" nor the "usual and customary anti-forgery and anti-copying measures, including but not limited to an imbedded artificial watermark." Complaint, ¶ 40(b), (c). It is not clear the extent to which Schwab should have been looking for these alleged "usual" signs of authenticity; at this point, however, Travelers has alleged enough to survive dismissal of its claim against

Schwab.

Schwab finally argues that Wells Fargo should bear full responsibility for the loss under the so-called "finality rule" of Section 3-418 of the Code; the finality rule provides that a drawee (here, Wells Fargo) who pays on a forged instrument is bound by that payment. *See* 810 ILCS 5/3-418. It is entirely possible that Wells Fargo will ultimately bear responsibility for the loss vis-a vis Schwab. However, this argument is premature as neither Wells Fargo nor Schwab have made any claims against each other.

## Conclusion

For the foregoing reasons, defendant Charles Schwab and Company, Inc.'s motion to dismiss count 2 [item # 4-1] is denied. Schwab is ordered to answer Count 2 on or before June 14, 2002.

Dated: June 3, 2002

MATTHEW F. KENNELLY
United States District Judge